UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROBERT GRAHAM (#99451)                                    CIVIL ACTION

VERSUS

MARCUS CALLAHAN                                           NO. 13-0767-BAJ-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 15, 2015.

                                                RICHARD L. BOURGEOIS, JR.
                                                UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT GRAHAM (#99451) | CIVIL ACTION |
| VERSUS | |
| MARCUS CALLAHAN | NO. 13-0767-BAJ-RLB |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendant's Motion for Summary Judgment (R. Doc. 17). This motion is opposed.

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Marcus Calahan, complaining that the defendant violated the plaintiff's constitutional rights on November 27, 2012, by subjecting the plaintiff to excessive force through the alleged application of a chemical irritant spray on that date without adequate justification.

The defendant moves for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent administrative remedy proceedings, a certified copy of the LSP Camp J Gar Unit Chemical Logbook for the dates November 26-28, 2012, certified copies of disciplinary reports issued against the plaintiff on November 27, 2012, by Major Trent Barton, Sgt. Kenneth Johnson, Nurse Katherine Bell and defendant Marcus Graham (charging the plaintiff with "Defiance" and "Aggravated Disobedience"), a digital audio recording of the plaintiff's disciplinary proceedings conducted on November 29 and December 3, 2012, photographs taken of the plaintiff on the date of the incident complained of, certified copy of excerpts from the plaintiff's medical records, and the affidavit of defendant Marcus

Callahan.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corporation v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corporation v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual

disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, the plaintiff alleges that on November 27, 2012, he was "sprayed down with chemical agent, mace," by defendant Marcus Callahan without sufficient justification. The plaintiff acknowledges that he was "hollering" in his cell on the morning of the referenced date, but he asserts that the defendant should have simply closed the door of the cell instead of using unnecessary and excessive force against the plaintiff.

In response to the plaintiff's allegations, the defendant contends in the instant motion that he is entitled to qualified immunity in connection with the plaintiff's claim of excessive force. Specifically, the defendant contends that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to any alleged violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified

immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[1]

Undertaking the qualified immunity analysis with respect to the plaintiff's claim of excessive force, the Court finds that the defendant's motion should be granted. Specifically, the Court finds that the plaintiff's opposition and evidentiary showing are not sufficient to support a finding that there exist disputed issues of material fact in this case relative to the issue of excessive force.

A use of force is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986). The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who

---

1. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. The Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances, and other factors to be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

Applying the foregoing standard, the Court finds that the plaintiff has failed to come forward with evidence sufficient to support a finding that there are disputed questions of material fact in this case regarding the objective reasonableness of the defendant's use of force on November 27, 2012. As noted above, the plaintiff acknowledges in his Complaint that he "was hollering" in his cell when defendant Callahan utilized an application of irritant spray on the referenced date. *See* R. Doc. 1 at p. 5 (wherein the plaintiff concedes that he "was hollering" when defendant Callahan approached the cell). In addition, the plaintiff acknowledged in an administrative grievance that he submitted to prison officials shortly after the incident that he was "hollering out loud" for several minutes before the incident, accusing security officers of being "all whites and racists," when "the next thing [he] knew," the defendant approached and utilized the irritant spray. *See* R. Doc. 19-1 at p. 6. The plaintiff does not suggest in either the Complaint or in the referenced grievance – as he now seeks to suggest in his opposition to the defendant's motion – that he had ceased hollering prior to the brief application of force. To the contrary, the plaintiff's focus in his Complaint was upon his contention that, instead of using

irritant spray to quell his admitted hollering, "all [the defendant] had to do was close the booth door" of the plaintiff's cell, thereby minimizing the effect of the plaintiff's disturbance.  *See* R. Doc. 1 at p. 5.  Even if true, however, and even if the closing of the cell door presented a viable alternative to the plaintiff's disturbance, this does not support a finding that the defendant's *purpose* in utilizing irritant spray was to cause the plaintiff harm or pain as required for a finding of unreasonable and excessive force under the Eighth Amendment.  Instead, the plaintiff's contention regarding "clos[ing] the booth door" appears to concede that the defendant's purpose in taking action was, not to punish, but to quell the plaintiff's admitted disturbance.  Although the plaintiff now seeks to assert that he had ceased the referenced disturbance prior to the application of irritant spray by defendant Callahan, this assertion is belied by the above-noted implicit contradictions in the plaintiff's earlier statements – both that the use of irritant spray was the very "next thing" that occurred while the plaintiff was "hollering out loud" and that defendant Callahan should have closed the cell door in response to the plaintiff's hollering.

In addition to the foregoing, the plaintiff does not adequately refute the defendant's sworn assertion that only a brief one-second application of irritant spray was utilized in order to obtain the plaintiff's compliance on November 27, 2012.  The defendant has attached as an exhibit to the instant motion a certified copy of an excerpt from the prison gas logbook showing that only 0.5 ounces of chemical irritant was utilized, by weight, from a single 3.1 ounce can during the incident in question.  This small amount of chemical irritant, utilized in the context of the plaintiff's admitted disturbance, does not lead to a conclusion that the defendant's use of force was motivated solely by a desire to cause the plaintiff harm instead of by a wish to quell the referenced disturbance.

Finally, the evidence introduced by the defendant suggests that the plaintiff suffered only

minimal discomfort as a result of the brief application of irritant spray and also that prison officials undertook action to minimize the effect of any resulting harm. As noted above, while the existence of minimal injuries does not alone warrant the rejection of a claim of excessive force, the minimal nature of a claimant's injuries may be relevant to the question whether the use of force was reasonable or excessive under the circumstances presented. In the instant case, the plaintiff was seen by a health care provider shortly after the incident complained of and, whereas he complained that his eyes and skin were burning, that he was allegedly coughing up blood, and that there was blood in his nose, the provider noted that the plaintiff had a "patent airway," was in no acute distress, and had no visible blood in his nose. *See* R. Doc. 17-8 at p. 4. Approximately ten minutes later, the plaintiff was again seen by a health care provider, this time at the prison infirmary, complaining of pain to his right foot in connection with a subsequent unrelated "confrontation" with security. According to the medical record generated during that second evaluation, the plaintiff voiced no complaints regarding having been subjected to irritant spray a short time earlier. *See id.* at p. 5. Finally, the plaintiff was seen by LSP medical providers a third time on the same date, this time approximately two hours later, again complaining of an unrelated confrontation with security. Again the plaintiff voiced complaints regarding generalized pain to his body but noted no complaints whatever relative to the earlier application of irritant spray or to any residual effects thereof. These medical records, reflecting as they do only minimal complaints and symptoms voiced by the plaintiff on the date of the incident complained of, do not support a finding that the plaintiff suffered any injury of significance as a result of the defendant's brief application of irritant spray. Although the plaintiff has produced a copy of a sick call request submitted by him to prison officials several days later, on December 2, 2012, wherein he complained of allegedly coughing up blood and of

alleged soreness and burning to his face, neck, eyes, throat, nose and testicles, all supposedly resulting from the use of irritant spray on November 27, 2012, *see* R. Doc. 24-5 at p. 3, there is no indication that there were any objective symptoms to support these assertions or that the plaintiff sought any further medical treatment after that date. In short, the medical evidence in the record supports the defendant's assertion that only a brief application of irritant spray was utilized against the plaintiff on November 27, 2012, and that such application was not for the sole purpose of causing the plaintiff pain.

Based on the foregoing, the Court concludes that the plaintiff has not presented sufficient evidence to contravene the evidence presented by the defendant in connection with the instant motion, much less evidence sufficient to meet the plaintiff's burden of proof, to rebut the defendant's assertion of qualified immunity, and to show the existence of a genuine disputed fact regarding whether defendant Callahan utilized unreasonable or constitutionally excessive force on the date in question. *See Gates v. Texas Department of Protective and Regulatory Services, supra*, 537 F.3d at 419 (recognizing that the plaintiff bears the burden of rebutting a defendant's assertion of qualified immunity on motion for summary judgment). The competent evidence adduced by the defendant, supported by affidavits and documentation, reflects that the use of force against the plaintiff on November 27, 2012, was minimal in nature and was not for the sole purpose of maliciously and sadistically causing the plaintiff harm but, instead, was for the purpose of restoring order and maintaining control in response to an inmate who was admittedly causing a disturbance on the cell tier. The law is clear that an application of force may be justified by an inmate's failure to comply with orders by security officers to cease a disturbance. *See, e.g., Calhoun v. Wyatt*, 2013 WL 1882367, *7 (E.D. Tex. May 2, 2013) ("[t]he law ... allowed officers to use force in a good faith effort to restore discipline, and permitted the use of

pepper spray on prisoners who were resisting or refusing to comply with orders"); *Schneider v. Kaelin*, 2013 WL 1867611, *5 (S.D. Tex. April 21, 2013) (noting that "[t]he Fifth Circuit has consistently found no excessive force where prison officials employ force against inmates refusing to comply with orders"). It is also clear in this case that the plaintiff was seen by medical personnel after the brief application of force, and he does not allege that the application of force caused any injuries of significance. Accordingly, based upon the plaintiff's failure in this case to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, the Court concludes that the defendant's Motion is well-taken and that, on the record before the Court, the defendant is entitled to summary judgment as a matter of law.[2]

Finally, to the extent that the plaintiff seeks to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction over state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, considering the allegations of the plaintiff's Complaint and the recommendation of the Court that the plaintiff's federal claim be dismissed, the Court recommends that the exercise of supplemental jurisdiction be declined.

---

2. Although the plaintiff complains that the application of irritant spray by defendant Callahan on November 27, 2012, was in violation of prison rules and regulations because these rules provide both that the "highest ranking" officer present in the area is the person who should utilize irritant spray and that cell doors "can be closed" when an inmate is causing a disturbance, *see* R. Doc. 24 at pp. 2-3, the law is clear that a mere violation of prison rules and regulations does not rise to the level of a constitutional violation actionable under § 1983. *See Jackson v. Cain*, 864 F.2d 1235, 1353 (5th Cir. 1989).

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims and that the defendant's Motion for Summary Judgment (R. Doc. 17) be granted, dismissing the plaintiff's claims asserted herein, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on January 15, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**